May it please the Court, my name is Stewart Sandhouse. I represent the appellant in this case, Connie Maynard. I would also like to recognize my learned colleague, Mr. Fuller, who represents the appellees. I would request that I could reserve half my time for rebuttal. It would help me if you started out with a sequence of the dates on which the disability happened and whether there was a cessation and a return. If you could just give me those dates, I would appreciate it. Yes, Your Honor. Essentially, Mrs. Maynard became disabled in April of 2000. There was a decision by her company, Hewitt, to place her on disability. She went out for exhaustive testing, including spinal taps and other draconian tests. Subsequent to those testings, she went back to work in or about a week and a half. She tried working again, and again was unable to continue. She went back on disability again and continued for several more weeks until the month of June, where she had a two different doctors tell her that she must go on long-term disability. In the interest of convenience, both for bookkeeping and for her former employer, she used the date July 5, 2000, as the date, as her final date of going out on disability. Actually, as we specified in the brief, it was in June that she had stopped working. She had some vacation time, and it was after the Fourth of July holiday. Therefore, July 5 was picked for that particular purpose. Where that becomes germane, as we'll discuss a little bit later, is that there's a recurrent disability clause within Policy 1, which is appellant's contention is the operative policy. Basically, the recurrent disability clause is a vesting clause. It indicates that if a claimant goes back to work and then goes back out on disability within six months, then the disability continues. There's no additional elimination period, and it continues. We believe that, among other reasons, we believe that would be a vesting language requiring Policy 1 for the claimant. Did you make that argument in your opening brief? Yes, ma'am. Where in your opening brief do you make the specific argument regarding the recurrent disability issue? In the opening brief? I think if you look at page 23. Yes, we make, it is page 23. Okay. And we have a, additionally, we had, because of the absolute chaos that this case generated by having a new policy disclosed to us five months. I see that you cited that provision. Yeah. But where do you make the particular argument that this resulted in a vesting? By our argument, our argument is made by operation of that particular clause. And in a declaration that we provided during summary judgment, we detailed specifically what, basically, what those dates and what the provisions were, and that would be the basis for our argument. I understand that, but I didn't see that particular argument regarding the vesting. In the next two sentences, actually, where it says that even if it may not always be the case, that is, that the document enforced at the time a claimant becomes disabled ought to be the document which controls. That's a different issue than whether or not the benefit had vested. Well, I, in terms of, that's correct. But the argument, the argument that we're looking at with Policy 1 versus Policy 2. It's on the abuse of discretion or de novo. It is de novo. And, essentially, whether Policy 1 did, in fact, vest for our client. And our argument is, one of our arguments is that, pursuant to a recurrent disability where she had the same condition and her employer put her out on disability, that she falls within this particular provision. I didn't see that argument made. I'm sorry, Your Honor. It may have not been as clear as it should have been. We did provide a detailed declaration to our summary judgment motion that the court would not consider. Unfortunately, the court allowed my learned colleagues extrinsic evidence to support their position. They were in opposition on Policy 2, but denied all extrinsic evidence to us and kept us to the administrative record. The court wouldn't even consider declarations allowing us to try to explain how Policy 2 got into the record, which I indicated came in five months into the litigation. Did the district court discuss the discrete issue of vesting? That issue arose, in my humble opinion, that issue arose for a discussion from Gros-Solomon. Okay. And, essentially, Gros-Solomon holds, and there's a later case that, unfortunately, I didn't get in time, that the court looked at Gros-Solomon. Did the court rule on the vesting issue, specifically whether or not the benefits had vested? The court indicated that vesting, that a contract, that a provision, the contract vests at the time of the claim accrual, well, does not vest at the time of the claim's accrual, but vests at the time the claim is denied. What specifically did the court rule regarding your client's vesting of benefits? The court ruled that Policy 2 was the effective document, and that under Policy 2, under Policy 2, according to the court, that the decision to deny the claim was made during the operation of Policy 2. Therefore, the claim did not vest. Now, there is something in the record that suggests that Policy 2, although effective in 2001, was adopted in 2002. Yes. And then there's a document from a declaration from the company that says, that doesn't really take that back. I think it says that it was effective in 2001, but never really says when it was adopted. Yes, Your Honor. We received, first of all, we received, we were first introduced to Policy 2 and these amendments five months into the litigation. Policy, what we also received during litigation was a notice of errata indicating that Policy 2, although apparently adopted January 1, 2002, was, was really effective January 1, 2001. And that's never been explained because you never had any discovery. That's right. And we filed a 56-F motion once we received Policy 2, and the, and I say this quite respectfully, it's, it's suspicious with this backdating. We needed discovery. We believe that even under Policy, if Policy 2 was adopted January 1, 2002, and my client's claim was denied in June of 2001, she would still be under, still be under Policy 1. We asked the court, we begged the court to allow us reasonable discovery to take a look at this conflict. And we prepared discovery, and all this was done prior. That's not the, I'm sorry, did I, okay. All right. Now, getting with Policy 2, there's a couple of other issues I would like to raise. We repeated from the very, from the onset of the appeal, we make it a practice of requesting from the administrator every planned document that they're using. Amendments, summary plan descriptions, amendments to amendments, riders, anything in their, in their storage facility that may have an impact. And also we requested documents that were permitted for us, were relevant, relevant to us, pursuant to the 2000, year 2000 changes in the, in the labor regulations, which basically were, were drafted in January 1, 2002. And we requested to make certain that ERISA beneficiaries were entitled to a full and fair review. And that meant getting documents regarding claims handling practices. Well, as it usually goes, all of that was ignored. But what we did get was, was a letter from CNA specifying that Policy 1 was the operative contract. We got, and that was it. We sent a further letter. We wanted... And you also got letters that, the decision letters quoted the definition of disability from Policy 1. Absolutely, out of Policy 1. And, Your Honor... Is there anything, the, the, your opponent argues that it all doesn't, that doesn't matter because there was nothing prejudicial about the change in the, there's nothing different would have been done. Now, I understand that you also, you argue for one thing, you might have had a different decision as to litigation. But what as to the, what about as to the disability definition? Does that matter? Yes. Yes, Your Honor. There is a different, there is a different definition of disability. And most importantly, there is a magnificent change in the proof of claim requirements. We are now looking at a ten-item list specifying what is required for a claimant to prove up her claim. That was not in Policy 1. But that hasn't been argued here. They never argued that you didn't, they never, haven't relied on Policy 2 for purposes of arguing that you didn't prove your claim. Well, Your Honor, it, it's important because they changed the materiality of, of the description of evidence required. They also added the phrase, objective evidence. They also want to, and there are other material provisions in those ten points that they surreptitiously used when they, when they denied the claim. I was looking at a crystal ball. I had absolutely no idea what they were talking about. They told, they in fact, subsequent to their denial of the appeal, this was after the denial of the appeal, we received another letter pursuant to our request. We received a letter from CNA from that appeals, from the claims handler specifying that Policy 1 is the document that we relied on in deciding this claim, and that's it. No mention of Policy 2. I have another question. The, this is sort of background for me. This, who was the plan administrator under this plan? Good point. The plan, it, it's somewhat vague. In the ERISA, in the, in the ERISA provisions in the policy, they indicate that Hewitt is the plan administrator. However, there is no specific delegation, express delegation of authority naming CNA as a, as a plan beneficiary, as a plan fiduciary, and that is against ERISA regulations. There has to be an express delegation of authority, and that's not been done. But I've noticed this before. So you, in other cases, you have, so you have this insurance policy, which is really, as far as I can tell, something that the plan purchases to fund its obligations. Then in the policy is where this change as to the review of, of discretionary decisions appears. Does it appear in the plan anywhere? Does it appear, has Hewitt adopted it in any place? I don't quite understand how the insurance company gets to delegate to itself. That's exactly what the insurance company did in its amendment. It indicated that it has discretionary authority. However, there is nothing in the plan that specifies that Hewitt holds the position. They're very sophisticated. They make billions of dollars running HR programs. In fact, they run multimillion-dollar programs for CNA, as a matter of fact, which brings me up to another conflict. But the bottom line is Hewitt held on to the position as plan administrator fiduciary. They didn't want to let that go. But they never expressly delegated that authority to CNA. So who actually made the decision on the disability claim? CNA. However, once we, subsequent to the final decision, I'm going to have to stop in a second. Subsequent to the final decision on the appeal, CNA, in addition to CNA sending us a letter that policy one is the document that we relied on, that is the only document, we also received over 1,100 documents from them, which included documents that we requested at the beginning of the appeal. Now they're producing them, subsequent to the closure of the appeal. And we went back to the plan fiduciary, that's Hewitt, to the plan administrator, to the real fiduciary and said, look, this is unlawful. You need to reopen this claim and allow us an opportunity to respond. But for reasons I will talk about later, because of Hewitt's incredible relationship with CNA, they have a multimillion-dollar relationship where it's been characterized as their one team. Hewitt is CNA's actuary. And CNA and Hewitt is going to go to CNA and say you screwed up on this claim, you pay it. They're not going to do that. There's a conflict. It smells bad. It's a conflict of interest. And it's got to be decided. And after ‑‑ I want to reserve the rest of my time for rebuttal. I apologize, Your Honor. All right. Thank you very much. Good morning. May it please the Court. My name is Mark Fuller. I'm here on behalf of the appellees. I'd like to start by responding to a couple of questions that were posed already to my opponent this morning. Let me point out that the complaint itself alleged that Ms. Maynard became disabled on July 5th of 2000. The court, the district judge cited that and relied on that in his initial rulings. And this notion of a recurrent disability is something that sprang up later in the case, but in any event is not in ‑‑ Well, let me ask you about the ‑‑ I know you don't like the policy one, policy two language, but whatever we're going to call it, let's call it that for convenience. The administrative or the internal processes were all based on policy one. Is that true? I believe, yes. Okay. So why isn't that binding at that point? How can you switch gears? If you made a decision based on policy one, and I don't understand how you can now switch gears and try to rely on a different policy. Yeah. Well, I think that that's sort of the irony of this case, though, is that policy one is more stringent, if you will. In other words ‑‑ But I don't see why that matters. The point is that you were relying, you told them you were relying on policy one and you did rely on policy one. Certainly if you were an administrative agency, a federal, a governmental administrative agency, you would be bound by the way in which you made your decision. You couldn't now come into court and say, well, in fact, there is a different policy. We were wrong. You couldn't do that. I think that's true, Your Honor, if what you're dealing with is a change in the substantive definition of what a disability is. In other words, if we make a decision under policy one that ‑‑ But you're also making an interpretation as to which policy applies. But it's meaningless with all due respect. Well, it doesn't matter if it's meaningless. You were doing it. You were represented that policy one applied and you operated as if policy one applied. And you interpreted whatever actually happened as being that policy one applied in the pre-litigation scheme. How can you switch gears after that? Well, I guess perhaps, Your Honor, I would disagree with the statement that we agreed that policy one applied. I believe what the record shows ‑‑ Didn't you say that the administrator decided it under policy one? Yes, under the substantive definition, which is the same as the substantive definition in policy one. Is there any basis for having one substantive definition and another one for purposes of judicial review? In this case, as I said, the definitions are substantive. I know. But is there any ‑‑ is there anything in either of the policies or in any law that would allow you to have a split decision, so to speak, as to which policy applies substantively on the one hand and then which one applies with regard to the authority to interpret the plan on the other? Well, I think the answer is the Gross Salmon case, which ‑‑ which squarely holds that ‑‑ No. What it holds is what ‑‑ what governs is when the claim was filed, not what governs after the claim was filed. In fact, if you take ‑‑ if you take ‑‑ Well, it's when the claim is ‑‑ excuse me. Okay. When the claim was denied. When the claim was ‑‑ Okay. What ‑‑ what governed when ‑‑ what in fact was used when the claim was denied? The policy that was in place was so-called policy two. I know. But what did you represent was ‑‑ that's your position. What did you represent was denied? As I understand it, there was a letter from a claims administrator to Ms. Maynard or her counsel indicating that policy one, the definition ‑‑ I guess the definition of disability in that policy was the one that had been applied. Well, not only that, but in fact all the letters that ‑‑ that substantive letters used, used the definition from policy one. They quoted a definition and it was the one from policy one. Right. Which is, again, the same definition in policy two. Well, it's not the same definition. It's the same definition in some respects but not others. It adds ‑‑ I have seen no argument whether in the district court or here that there's a substantive or meaningful difference between the two definitions. They are almost verbatim. Counsel, would the standard of review be the same under both policies? No. I don't believe it would. So under the second policy it would be abuse of discretion and the first would be de novo, right? Correct. Yes. So it does make a difference whether or not policy one was the operative policy or policy two, because under policy two there is a more liberal interpretation of the denial. It certainly matters for the purposes of judicial review, Your Honor, and there's no question about that, as it would have mattered in the Gross Salmon case. But Gross Salmon holds that there is no vesting of the rights, even if it were a substantive provision. For example, assume that the definition of what total disability one or total disability was had changed dramatically from policy one to policy two. Right. If we had relied on policy two in the beginning, we wouldn't have that same conundrum. How come you didn't furnish policy number two when you were told to? The record is silent on the issue, although, Your Honor. You have to accept some blame for that, don't you? Well, it's consistent with simple human error, I think. But if blame is to be placed, I suppose we could place blame on the person who sent the package out to Ms. Maynard. But that isn't the only thing that happened. It was consistent all the way through. As I say, the definition, you keep saying there's no difference. One of them has two subsections, the other one has three subsections. They look different, the definitions. And they were quoted from policy one, not from policy two. The only the standard that was being applied to this case, I understand that. But the verbiage was different, and the one that was quoted was from policy one. So it wasn't just that they sent out a different thing. Let me ask you some other questions. First of all, the at a minimum, at a minimum, isn't it true that we need to remand this case for discovery given Abate? Because the district court took the position that under no circumstances could there be discovery with regard to the conflict issue, and Abate says otherwise. So he obviously did not, he thought he had no discretion or no ability to order discovery, and Abate says he does. On the contrary, Your Honor, the district judge, again with respect, did not find that he had no discretion in these matters. In fact, he exercised his discretion, and we have, I have sort of canvassed this. What does the district court judge do with the discovery request? Well, first of all, I think we need to place it in context and realize that the discovery request came in the context of rather late in the 56F. Because the discovery of policy two was rather late. The reliance on policy two was rather late, so that's why the discovery request was rather late. Actually, Your Honor, I'm sorry. The record is to the contrary on that. The record indicates that the discovery was sent out, there were objections lodged to it, and that Ms. Maynard's counsel did not file a motion to control or otherwise bring the matter to the district judge's attention for a considerable period of time, and then lodged a 56F request. But moreover, the ---- Excuse me. The district court said, evidence outside the administrative record is completely inadmissible. That's what he said. Then he discussed a case from the D.C. Circuit. He said that that's a case from the D.C. Circuit. The Court is not required to adhere to the holdings of courts and circuits outside the Ninth Circuit. Then he quotes this Newman case and says that within the Ninth Circuit it's been found that the record is inappropriate to develop evidence of a conflict of interest. Those all sound like absolute statements to me. I think, Your Honor, he goes on to say that while discovery into the alleged conflicts might be something that he could certainly entertain, he then goes on to the Newman analysis. And now Newman is, of course ---- Just show me where he says that, please. Yes. Thank you, Your Honor. I may have excerpted it already and brought it with me to the podium. Your Honor, I'm ---- I apologize. I don't see it, but I know we cited it. It's not there. Is it in the March 2005 order or the 2006 order? It's a discussion. It's a citation to the Newman case. All right. That's what I was just reading from. Yes. But it's not there. You just said it's not there. He quotes the very analysis in Newman regarding the difficulty with reconciling the overbroad, far-reaching discovery in these ERISA cases with that. I mean, that's the part he quotes. And to me, that's obviously a discretionary kind of analysis. But it leads to an absolute conclusion that, therefore, never shall we do this. And that's not the abodied decision. Well, Your Honor, I respectfully disagree. I think that if you look at the court, the cases, and I have a few additional cases I'd like to cite to the court, because I've been looking at the district courts, both pre- and post-abodied, within this circuit and how they have handled these discovery issues. Let me just ask something else, okay? There's also the fact that when you came in with this new policy, there's this strange discrepancy about when it was adopted versus when it was effective. It's there. I mean, it's sitting there in black and white. And, in fact, then you come in with another declaration that doesn't really explain it. It simply says it was effective 2001. So why isn't that a reason there had to be a discovery, at a minimum? Your Honor, as I understand it, the discrepancy arose in the context of a statement made in one of the briefs that was filed below that referred to 2002, because, in fact, in the administrative record, there is also a 2002 amendment. See, there were several policies. The policy was adopted in 97. Whether you call policy, call that policy 1. Policy 2, if you want to call it, that is 2001. And then I suppose you could call it policy 3 in 2002. There was a miscitation that was cleared up through a notice of errata. Excuse me. Go ahead. What evidence is there in the record regarding the date that what we call policy 2 was adopted? The date it was adopted, not the effective date. What is there in the record that establishes the adoptive date? I think it is from the ‑‑ I think it's apparent from the face of the document itself and the foundation for which was established through an affidavit. And the challenge to that, the challenge ‑‑ The document says it's effective in January. It doesn't say when it was adopted. In that case, Your Honor, I guess my response would be that argument I don't believe was made below. I don't believe once the foundation was established for the plan that says it's effective on a certain date, I don't believe any argument ‑‑ But on de novo review, if we determined there was a material issue of fact, then granting summary judgment was not appropriate. And that appears to be a material issue of fact that was not ‑‑ that discovery was not allowed for. Your Honor, we're dealing then with the idea of de novo review. And with all respect, I think gross salmon forecloses that. I mean ‑‑ We review de novo whether or not the district court erred in granting summary judgment. And if there's a material issue of fact, the district court erred in granting summary judgment. But gross salmon holds that rights do not vest under this kind of policy. Exactly. If we assume that the policy in effect was the second policy, but that presupposes an issue that has a material question of fact embedded in it. Well, I suppose, Your Honor, if the question were was the policy actually effective even though it says on its face it was. But if the question is ‑‑ It says it was effective, but not when it was adopted. That's the critical point. But I believe under gross salmon the question is what was effective at the time the decision was made. You mean it could be done retroactively? I'm sorry? So it could be done retroactively? I don't know how these policies or when they are amended and so forth. But if there's no vesting issue, then I suppose they could. I don't know that that's the case. I don't know that the argument was made below. Your Honor, that was not the discovery that was sought in this case. Counsel, let me turn you to something else. In policy number 2, there are certain circumstances in which you apply policy number 1. And I think this case may fall into that. Have you looked into that? I have not. I don't believe the argument was made, Your Honor. Well, if it's right on the face of the policy, then I think that we can all pay attention to it. It's in the record. I'm looking at page 72 of the excerpt of the record. Yes, Your Honor. It's a ---- There are two places, one provision on the effect on benefits and one on the effect on preexisting conditions in that they say you apply policy number 1. And that's fine, Your Honor. I mean, to me, that throws us right back to the question of whether there was any substantive difference on the definition of disability between the two policies. Well, if you're applying the prior policy, you'd apply the whole thing, the standard review and everything else. Well, see, that's what's interesting. That's not what this says. I mean, what this says is it refers to a definition of disability. And I guess maybe that's the fundamental issue here or problem. I think it's certainly an interesting debate. But where you have a policy, two policies that have substantively, at least for the purposes of this case and the definition that was used in this case, I believe it adds the words and material. No, that's not all. And, Your Honor, I understand that the definition may have changed more than that. But I believe the portion of the definition that was actually applied in this case was that one. But why do you want to apply policy 2 if there is no substantive change? What difference does it make, then, that we apply policy 2? It's solely a question of judicial review. I mean, CNA and the plan. And, by the way, I did want to respond to a question that you posed to me. Yeah. I would like you to know that, because as far as anything I've seen in the record, this was generated by the insurance company. But I have no indication that you would have adopted it. Yeah. There are actually, let me give you the site. It's ER excerpt of Record 83, I believe, is where it appears simultaneously in the plan. And if that is not, in any event, that's a document outside the insurance policy that also refers to discretionary review. So who was the plan administrator? The plan administrator, I believe, is CNA. And where is that in the record? You know, Your Honor, it was in fact, as I understand it, undisputed. I think it was even alleged in the complaint. But I'm not sure it's in the record as such, because that issue didn't arise. Was there any proper delegation? Again, I don't believe that issue was challenged. I mean, to some degree, and let me come back to something I said at the beginning, which is we look back at the complaint and see what's alleged in the complaint, that she was disabled as of July. Where on the excerpt 83 is? About halfway down the page it says plan administrator. And it says the administrator and other plan fiduciaries have discretionary authority to interpret the terms of the plan and to determine eligibility. Right. But the administrator is never named. Your Honor, I — If anything, the implication is otherwise. Because right above it, it says the plan is administered by the plan administrator through an insurance company purchased from Continental Casualty Company. It doesn't say anything about the company being the administrator. The suggestion is certainly otherwise. The plan administrator is not the insurance company. Okay. I will acknowledge that there are different ways to read this page, Your Honor. But I guess my basic point is that appeal is not the time to be asserting new claims. For example, a claim that something had been improperly delegated or not delegated is an argument that could have been made and fleshed out at the district court level. It was not. That was not this case. And so a number of facts, a number of issues were not disputed below. And I guess I'm a little bit at a loss to respond. Was it disputed below that Plan 2 was in effect on January 1, 2000, at the relevant time, i.e., in mid-2001? Was that disputed? After the notice of errata was filed and the foundation was laid. Well, the notice of errata, as I understand it, only said that it was effective January 1, 2001. It did not dispute that it was adopted in 2002. It was a very carefully worded statement. Well, and I'm not sure, Your Honor, whether you're referring to the affidavit of Ms. Sauerhoff. Right. No, but there's actually another document in the record called a notice of errata that was filed by counsel, where counsel, an associate from our office, indicated that he had in fact misspoken when he had referred to 2002, because there was a 2002 amendment also in the record, and he explained that. That's not – he wouldn't have personal knowledge of the adoption date. No, but he's the one who said it in the first place. No one else said it. I mean, in other words, this idea that it was adopted in 2002 was a mistake made by an associate in our office who then filed a notice of errata, after which it was adopted. And said it wasn't adopted in 2002. Is that what he said? I don't have this notice. He said I was – I mistakenly was referring to the 2002 document that is in the administrative record. I meant to be referring to the 2001 document. It's as simple as that. And with all respect, that issue was not challenged after that time. You don't see the district judge faced with an argument that he needs to analyze about 2002. Well, no, there was a request for discovery on the date that Plan 2 or Policy 2 was adopted. I don't – I think if you look back, it's a question as to when it became effective that the discovery – and by the way, my time has almost stopped. May I just comment on the discovery? I mean, the discovery that was sought was 150 document requests, as well as the But that doesn't really matter, because the district court's position was they couldn't have any, under any circumstances. And I know you dispute that, but it's quite clear in the district court opinion. So what they're asking for is really irrelevant. And, again, respectfully, Your Honor, I would disagree, just because I think the citation to Newman and the Newman court's analysis is plainly a discretionary analysis. And the court cites to that in quotes But Newman is a district court case. It is. And this district court, the District of Arizona, the District of Oregon, and the district courts in California have all, even post-Abadi, addressed this very question, have addressed it in a discretionary way, and have analyzed it using the same analysis. By the way, this district judge just It would be different if it were addressed as a matter of discretion. But it appears from reading the order of the district court that it was not addressed as a discretionary matter. It was addressed as totally precluding discovery if it were an abusive discretion case. And I responded I'm sorry, Your Honor. Would you like me to – I mean, I see my time's up. But I don't want to take the Court's patience here. Yeah. Historically, historically, and certainly pre-Abadi, pre-Firestone and so forth, the general rule was that there was no discovery outside the administrative record, because the administrative record is all that you can consider on abusive discretion cases. Now, what's interesting is that Abadi not only did not address a discovery issue, but, moreover, reaffirmed the idea that in an abusive discretion case, and if you believe that the amendment was effective in 2001, then this is an abusive discretion case under Abadi, plainly. Well, maybe not. That depends on the effective data policy, too. And that's why I just said, if you assume that, and again, I don't The adopted data policy, too. But in Abadi, we said the district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest. Correct. So Abadi changed the landscape of discovery. Well, and it's interesting. Abadi doesn't address a discovery issue in the post- Well, it did. In the citations. I'm sorry. What was she just reading? It does address a discovery issue. Well, there was no discovery dispute in Abadi. And, in fact, there's some interesting, and I would say How would the evidence come in? How would additional evidence come in if there were no discovery? Well, the question is, in each case, is a case-by-case analysis of to what extent is some limited discovery Exactly. Correct. And I go right back, then, to the Newman analysis, which is a discretionary analysis looking at what the I understand your argument. I understand your argument. Okay. I don't agree with you, but I understand. Okay. Well, fair enough. I don't persuade everyone. That's for sure. May I give you the citations to these recent post-Abadi district court decisions Why don't you hand them in on a We have a form for that. Okay. Very good. Thank you. Your Honor, I'm from Philadelphia, so I have a tendency to speak fast. I'm going to do that right now. First, I want to just quickly address the issue of the express delegation argument, and it was raised below. In fact, if you look at 456 of the excerpts of record, we introduced an unpublished case that had just come down, but the court had decided to comment on it. And that's a Winterstein case. But again, it's unpublished. What was your argument regarding the delegation? Where was your argument expressly made regarding the delegation to It has to be expressly made. If you don't have this in the Where is your argument made regarding the lack of express delegation? It was made during oral argument. Where is that in the excerpts of record? 456, Your Honor. Okay. And would you respond to opposing counsel's position that there was never any discovery sought regarding the date Plan 2, Policy 2 was adopted? Yes, Your Honor. We sought discovery on a number of issues. We sought a multitude of discovery dealing with Policy 2. Could you tell me expressly in the record and specifically where you sought discovery regarding the adoptive date of Policy 2? That one matter. Well, it would be part of our discovery documents that we actually did file with the court. So you don't know expressly where it is in the excerpts of record that you addressed that discrete point? No, Your Honor, I can't. However, the court does address our request in its order that we're not entitled to it, which But that was more general. Judge Rawlinson is asking, did you specifically ask for discovery regarding the adoption of the 2001 plan? Yes, Your Honor. We expressly, in fact, that was the principal reason for filing the 56-F motion, which goes into that. We also asked for discovery regarding the conflict of their medical person who did an initial review of the file, and I'll speak quickly. Dr. Truckellett was represented by CNA and by Dr. Truckellett himself as an independent consultant. You know what Dr. Truckellett is? Dr. Truckellett was a CNA employee, a medical director. And they represented to the lower court that they were he was independent. And also at the same time, we did, which is in the record, we made, without discovery, we did what we could. We came up with cases contemporaneous with this when Dr. Truckellett went into a U.S. District Court and told a judge that he is independent. And the judge made a comment to the fact that we can take Dr. Truckellett's opinion because he doesn't have any ax to grind. He's independent. At the same time, Dr. Truckellett was a member of an insurance defense working group that provided help to insurance companies to defeat claims. He was on their editorial staff. And under his name, the only thing that his background says is CNA medical director, Maitland, Florida. This was all contemporaneous to the time when he was representing to the courts that he was independent, and CNA was representing to us that he was independent. This, the lower court, in its opinion, specified that Dr. Truckellett was independent. So we wanted to get, Dr. Truckellett is biased. He is an employee. He knows nothing about chronic fatigue syndrome. He did a, he admittedly did a cursory review of documents that he said admittedly was incomplete, missing documents. Counsel, in your view, what's the effect of Abati on this case? Your time is up, so could you answer my question? I have one more. Could you answer my question? I have the same question, so why don't you answer Judge Wong's question? Okay. The effect of Abati, and this will go into something I want to read to you. Abati, Abati is a godsend, really, for the, for a claimant under ERISA. ERISA essentially, under some of these draconian standards, under discretionary review, no wonder state insurance commissions are trying to regulate out discretionary contracts. On this particular case, counsel, what is the effect of Abati on this particular case? On this claim, Abati, basically, Abati specified that the, that the trial judge had to, had to weigh the case, weigh each case, weigh the case with each conflict. Well, here the district court first quotes the same sentence in Firestone v. Brooke that, that Abati ends up relying on, which says that. And then he goes on and he relies on Atwood, which seems to say the opposite, at least with regard to whether or not you can do a, a sort of scaled abusive discretion or whether you have to have this flip over to De Novo and how you get there. So it is a little mysterious what he was doing. He was looking, he was looking for, under the Atwood analysis, under the Atwood analysis, he was looking for smoking gun evidence for conflict. And as you know, smoking, if you don't have the right to discovery, you basically have a right without an effective remedy. How are you going to get new evidence if you don't have the right to discovery? And the most important issue, Your Honor, the last issue, is that on appeal, pursuant to ERISA regulations, CNA willfully and maliciously did not review medically any of the 600-plus pages of medical and neuropsychological data and reports presented by the claimant. And in, in regulation, in regulation, in regulation, Your Honor, the regulation specifies that in an appeal that the, that the plan administrator must consult with a medical provider, with a medical provider with expertise in that area. So what, you know what we have? We have a sham appeal. They didn't review the medical evidence and left it to a claims analyst to review complex neuropsychological data and medical data. All right. Thank you. Your time is up. Thank you, counsel, for your arguments in Maynard v. CNA Group Life Insurance Company, which is now submitted.
judges: Fletcher, Berzon, Rawlinson